UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 16-12451-RGS

CONSERVATION LAW FOUNDATION, INC.

v.

AMERICAN RECYCLED MATERIALS, INC.

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

June 16, 2017

STEARNS, D.J.

Plaintiff Conservation Law Foundation, Inc. (CLF), a member-supported environmental nonprofit, brings this citizen suit under the Clean Water Act (CWA) against defendant American Recycled Materials, Inc. (ARM), asserting that ARM is discharging pollutants into waters of the United States without the necessary permits. ARM has moved to dismiss. For the following reasons, the court will grant the motion.

BACKGROUND

For the purposes of a motion to dismiss, the court takes the facts alleged in the Complaint as true and draws all reasonable inferences in favor of CLF as the nonmoving party. *See Katz v. Pershing, LLC*, 672 F.3d 64, 70-71 (1st Cir. 2012).

The CWA requires permits for most discharges of pollutants from a point source. *See* 33 U.S.C. § 1311(a); *id.* § 1362(14) (defining "point source" as a "discernable, confined and discrete conveyance," such as a "pipe, ditch, [or] channel"). An exception is stormwater, the discharge of which requires a permit only if the discharge falls into certain enumerated categories. *See id.* § 1342(p). One such category is "industrial discharges." *Id.* § 1342(p)(3)(A). Environmental Protection Agency (EPA) regulations prescribe certain categories of "facilities" which engage in "industrial activity" and must, as a result, seek permits. *See* 40 C.F.R. § 122.26(b)(14). Many of these categories are defined by reference to "Standard Industrial Classification" (SIC) codes, which segment different classes of industrial activity.

This statutory framework forms the backdrop. ARM operates a facility at 157-165 Lowland Street in Holliston, Massachusetts. The facility abuts Bogastow Brook, a small stream that flows into South End Pond and the Charles River. The parties do not agree on the nature of the work done at ARM's facility. CLF alleges that ARM engages in "processing and/or manufacturing cut stone and gravel, asphalt and cement mixtures, and wood chips, recycling materials, and collecting and processing refuse," thus falling within a number of categories of industrial activity for which discharge

2

permits are required.¹  Compl. ¶¶ 31, 55.  For its part, ARM describes its activities as crushing collected asphalt, brick, and concrete to create a "small size stone-like product" sold as "construction aggregate" for use in construction projects, principally as a strengthening agent in paving.  Mem. at 4.  ARM contends that this activity falls under SIC code 5032 ("Brick, Stone, and Related Construction Materials"), which is not included under 40 C.F.R. § 122.26(b)(14).  *Id.* at 10-11.  The parties do agree that ARM has never obtained a permit for stormwater discharges.

CLF further alleges that stormwater runoff from the ARM facility reaches Bogastow Brook from point sources, channeling pollutants into the stream.  It contends that during rainstorms or snowmelt, runoff flows over uncovered piles of recycled materials at the facility, gathering dust, solids, oil and gas, and other pollutants.  Compl. ¶¶ 34-39.  CLF contends that this runoff then reaches the Brook through "site grading, surface water channels, subsurface hydrological connections, detention ponds, pipes, and other conveyances."  *Id.* ¶ 40.

---

¹ Specifically, the Complaint alleges that ARM falls within SIC codes 1422-1429, 1442, 2499, 2951, 4953, 5093, and "Major Group 32," an umbrella for multiple types of industrial activity, all of which CLF contends are subject to regulation under 30 C.F.R. § 122.26(b)(14) and its implementing "Multi-Sector General Permit," 80 Fed. Reg. 34,403 (2015).

3

In addition, CLF alleges that ARM's industrial activities create "process wastewater": "water which, during manufacturing or processing, comes into direct contact with or results from the production or use of any raw material, intermediate product, finished product, byproduct, or waste product." 40 C.F.R. § 122.2. CLF alleges that ARM uses water during its industrial processes for "washing and spraying recycled asphalt, concrete, gravel, soil, and other material piles; machinery and equipment; loading and unloading areas; and maintenance areas," Compl. ¶ 49, and that this water is then discharged into Bogastow Brook, *id.* ¶ 50. The parties agree that ARM has never obtained a permit for discharges of process wastewater.

CLF filed this lawsuit under the citizen suit provision of the CWA, 33 U.S.C. § 1365, in December of 2016. In due course, ARM moved to dismiss, asserting that CLF lacks standing to litigate the issue and that CLF's Complaint fails to make out a viable legal claim. *See* Fed. R. Civ. P. 12(b)(1), (6). The court heard argument on the motion on June 1, 2017.

## DISCUSSION

Standing is a necessary prerequisite to a court's Article III authority to adjudicate a case, and challenges to standing therefore must be addressed before reaching the merits. *See Baena v. KPMG LLP*, 453 F.3d 1, 4 (1st Cir. 2006). "[A]t the pleading stage, the plaintiff bears the burden of establishing

4

sufficient factual matter to plausibly demonstrate [its] standing to bring the action." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016).

The familiar triad of injury in fact, causation (or "traceability"), and redressability comprises Article III standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-561 (1992). When an organization like CLF seeks to represent the interests of its members, it must demonstrate that "at least one of its members has standing in his or her own right, the interests served by the suit are pertinent to the mission of the organization, and relief does not require the presence of the members in the suit." *Town of Norwood v. F.E.R.C.*, 202 F.3d 392, 405-406 (1st Cir. 2000).

ARM challenges CLF's standing on three grounds. First, it argues that CLF has neglected the abecedarian requirement that it must identify a group member who has been harmed by ARM's conduct. *See Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (Souter, J.). CLF has now mooted this issue by responding to the motion to dismiss with affidavits from three of its members describing the injuries they believe ARM has caused.

That leads to ARM's second objection, which is that CLF has not alleged an actual or imminent harm establishing an injury in fact. This argument fails in light of the member affidavits. CLF member Sierra H. Bright declares that she own a farm along the Charles River downstream of

5

Bogastow Brook. Dkt #10-2, ¶¶ 4-5. The Charles River frequently floods her fields, and as a result she is concerned that pollution in the water contaminates the soil and reduces her crop yield. *Id.* ¶ 14. She also states that she enjoys observing wildlife along the river from her home and land, and that pollution detracts from the experience. *Id.* ¶¶ 7, 11, 13. Similarly, CLF member Sara L. Wragge declares that she kayaks regularly on South End Pond and the Charles River downstream of Bogastow Brook, and that she views wildlife for pleasure on these excursions. Dkt #10-4, ¶ 4. These activities are dependent on clean water, and she is concerned that discharges from ARM degrade water quality and reduce her enjoyment. *Id.* ¶¶ 9-10. Finally, CLF member Cornelia C. Roberts declares that she regularly recreates along the Charles River downstream of Bogastow Brook, observing wildlife and views of both the Brook and the Charles River. Dkt #10-3, ¶¶ 4, 7, 8. She similarly states that her enjoyment of these activities is adversely impacted by water pollution. *Id.* ¶ 12.

These averments suffice to establish injury in fact to a CLF member. It has long been established that harms to aesthetic and recreational interests are injuries in fact for standing purposes and rise above a mere speculative

prospect of harm. *See Sierra Club v. Morton*, 405 U.S. 727, 735 (1972); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).[2]

ARM's third argument challenges the sufficiency of CLF's allegations of causation. Specifically, ARM contends that CLF has failed to plead a fairly traceable link between the claimed discharges and the harms allegedly suffered by CLF's members. This issue is better resolved on the merits. The Complaint alleges that ARM's discharges contain pollutants, ¶ 36, and each of the member declarations describes harms resulting from water pollution downstream of the facility. More broadly, the traceability requirement for standing "does not mean that plaintiffs must show to a scientific certainty that defendant's [actions], and defendant's [actions] alone, caused the precise harm suffered by plaintiffs . . . . The fairly traceable requirement . . . is not equivalent to a requirement of tort causation." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 257 (3d Cir. 2005), quoting *Pub.*

---

[2] Contrary to ARM's suggestion, there is no requirement that a CLF member allege that he or she no longer uses the affected waterways. While such allegations are commonly used to establish standing, *see, e.g., Me. People's All. & Nat. Res. Def. Council v. Mallinckrodt, Inc.*, 471 F.3d 277, 284 (1st Cir. 2006), the relevant question is simply whether ARM's activities create recreational or aesthetic harms, which can be established by a reduction in aesthetic or recreational value, *see, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000); *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1149 (9th Cir. 2000).

*Interest Res. Grp. of N.J., Inc. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 72 (3d Cir. 1990). The fact that ARM allegedly discharges pollutants into the Bogastow Brook, and that those discharges contribute to the aesthetic injuries the plaintiffs have suffered, suffices to establish traceability for standing purposes.[3]

ARM's arguments about causation, however, touch on the core argument supporting its motion to dismiss under Rule 12(b)(6). ARM contends that CLF has failed to plead sufficient facts to make out a plausible allegation that any "discharge" from a "point source" occurs from ARM's facility.[4] *See Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1142

---

[3] ARM has not contested redressability, but for the sake of completeness the court notes that a decision compelling ARM to seek a permit for any currently unpermitted discharges and the resulting civil penalties would both ensure greater protection of the Bogastow Brook and Charles River and would have a deterrent effect on other inappropriately unpermitted dischargers. *See Powell Duffryn*, 913 F.3d at 73.

[4] ARM couches this argument as affecting CLF's standing to bring suit. After all, as ARM points out, if CLF cannot plausibly allege that ARM discharges, then it cannot plausibly trace the harms its members have suffered to ARM's conduct. *Cf. Me. People's All.*, 471 F.3d at 284 ("[N]either a bald assertion of . . . harm nor a purely subjective fear that an environmental hazard may have been created is enough to ground standing."). The boundary between standing and the merits is not always clear, and at times the two may "substantially overlap." *Town of Norwood*, 202 F.3d at 406. To the extent there is any daylight between the concepts, it makes no difference here. The standard applied to each type of motion is the same, *see Hochendoner*, 823 F.3d at 730, and the scope of the material properly before the court is unaffected, *see infra* note 5. Finally, because the

(10th Cir. 2005) (to show a violation of the CWA's permitting requirement, "a plaintiff must prove that the defendant (1) discharged (2) a pollutant (3) into navigable waters (4) from a point source (5) without a permit"). The applicable standard is well known: a court must examine the factual matter alleged in the complaint (as distinguished from its legal conclusions) to determine whether it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint may not merely offer "a formulaic recitation of the elements of a cause of action" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*, quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).

The CWA defines the term "discharge of a pollutant" as "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12)(A). ARM contends that there is no "addition" of pollutants to Bogastow Brook from its facility. It has provided two engineering drawings of the facility site showing that the facility is surrounded by an earthen berm,

---

court will dismiss this case without prejudice, the effect of the judgment is identical. *See Hochendoner*, 823 F.3d at 736 ("[A] dismissal for lack of Article III standing must operate without prejudice.").

including along the side of the site bordering Bogastow Brook.⁵ In addition, the drawings show that the facility has a sedimentation pond which collects water runoff within the facility.

CLF's factual allegations about discharges are contained in two paragraphs of the Complaint:

> 39. Upon information and belief, during precipitation events and instances of snowmelt, water flows onto and over exposed materials and accumulated pollutants at the Facility, generating stormwater runoff associated with the Facility's industrial activity.
>
> 40. Upon information and belief, stormwater runoff from the Facility has been and continues to be conveyed by the operation of gravity *via* site grading, surface water channels, subsurface hydrological connections, detention ponds, pipes, and other conveyances to Bogastow Brook and its associated tributaries

---

⁵ This material is properly before the court regardless of whether this challenge goes to standing or the merits. A court may consider materials outside the pleadings in addressing a Rule 12(b)(1) motion, such as one to dismiss for lack of standing. *See Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002). In addition, a court may consider material outside of the complaint in considering a motion to dismiss without converting it into a motion for summary judgment where the documents are of undisputed authenticity, official public records, central to the plaintiff's claim, or sufficiently referred to in the complaint. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Here, CLF does not contend that the court cannot consider the engineering drawings, nor does it contest their authenticity. Counsel for CLF also stated at the hearing on this motion that she had no objection to the court's consideration of the drawings at the motion to dismiss stage.

> and wetlands and downstream receiving waters, including South End Pond and the Charles River. . . .[6]

Although CLF does not specify the basis for its "information and belief" in the Complaint, *see Menard v. CSX Transp., Inc.*, 698 F.3d 40, 44 & n.5 (1st Cir. 2012) ("information and belief" pleading must involve reliance on secondhand information believed to be true, and not on "pure speculation"), CLF offers several rejoinders to ARM's arguments about its remediation efforts. It points out that ARM's documents demonstrate that the site elevation of the lot on which the facility is located descends from 180 feet to approximately 153 feet along Bogastow Brook, and argues that satellite imagery obtained from Google Earth and attached to the Complaint suggests that the width of the berm along the Brook is narrower than depicted on the drawings. Opp'n at 19; Compl. Ex. B. In addition, the water in the sedimentation pond sits approximately one foot below the height of the berm, Def.'s Ex. B, and "[i]t is not clear, but will be clear once CLF has access to ARM's facility during discovery, whether the pond has an outlet or under what conditions water discharges from the pond during heavy rain events or periods of snow melt," Opp'n at 19. Finally, CLF asserts that "in addition to

---

[6] With respect to process wastewater, the Complaint simply alleges that "[u]pon information and belief, process wastewater from the Facility is and has been discharged into waters of the United States." ¶ 50.

11

the pond, there are other points of discharge to Bogastow Brook, as CLF will prove at trial." Opp'n at 19.

These allegations, singly and collectively, are insufficient to plausibly allege that ARM's facility discharges into Bogastow Brook. In the absence of the berm and sedimentation pond, CLF might make out a viable claim: the court accepts the common-sense proposition that water flows downhill, *see generally* Isaac Newton, *Philosophiae Naturalis Principia Mathematica* (1687), and a complaint may cross the plausibility threshold based on common sense, *see García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013). Here, however, materials appropriately before the court plainly demonstrate that something more than the force of gravity is required for discharges to occur. Despite this fact, CLF acknowledges that it has no information about discharges from the sedimentation pond, and it does not allege facts that plausibly show that water escapes over, under, around, or through the surrounding earthen berm.

CLF's assertion that it will demonstrate at trial that other avenues exist by which water reaches the Brook likewise also does not carry the Complaint over the plausibility threshold. No factual matter is alleged beyond the information and belief assertion that "site grading, surface water channels, subsurface hydrological connections, detention ponds, pipes, and other

conveyances" carry water to the Brook "by the operation of gravity." Compl. ¶ 40. No specific conveyances are identified. Nor is any information provided in the Complaint to explain why it is plausible to think that contaminated water actually does breach ARM's defenses and reach the Brook through these conveyances, if they do exist. Perhaps there are good reasons, based on hydrological principles or otherwise, to believe that water reaches the Brook through some of these sources, but the Complaint does not explain them. The result is that the allegations of discharge are "so general and conclusory as to amount merely to an assertion that unspecified facts exist to conform to the legal blueprint." *Menard*, 698 F.3d at 45.

Of course, the plausibility standard is sometimes applied more flexibly where "a material part of the information needed is likely to be within the defendant's control." *García-Catalán*, 734 F.3d at 104. In those instances, limited discovery may be permitted to provide a missing link. *See Saldivar v. Racine*, 818 F.3d 14, 23 (1st Cir. 2016). Key to those cases, however, is the proposition that a party could not reasonably be expected to plead sufficient factual matter without discovery. For example, the First Circuit has remanded for limited discovery a case in which a man injured twice in rapid succession on a railroad track could not be reasonably expected to ascertain information about the defendant's conduct between his injuries. *See*

*Menard*, 698 F.3d at 45. Similarly, in *García-Catalán*, the First Circuit observed in a slip-and-fall case that "it cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would have any information about either how long the liquid was on the floor or whether any employees of the [defendant] were aware of the spill." 734 F.3d at 104. These complaints created a "reasonable expectation" that discovery would reveal evidence to fill in the gaps. *Butler v. Balolia*, 736 F.3d 609, 617-618 (1st Cir. 2013), quoting *Twombly*, 550 U.S. at 556. Here, by contrast, it is not unreasonable to expect CLF to obtain basic information plausibly suggesting that a discharge occurs before subjecting ARM to the burdens of discovery: more detailed allegations explaining why it is reasonable to believe that ARM's defenses are ineffective, observations of discharges, or downstream testing of pollutants, singly or in combination, might meet the challenge.

ORDER

For the foregoing reasons, ARM's motion to dismiss (Dkt #7) is <u>GRANTED</u>, and CLF's Complaint is <u>DISMISSED</u> without prejudice. The clerk is directed to enter the dismissal and close the case.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE